UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

RAFAEL SERRANO,

                              Plaintiff,                    14 Civ. 560

        -against-                                           OPINION

JESSICA LOPEZ,

                              Defendant.

------------------------------------------X

A P P E A R A N C E S:

        Attorneys for Plaintiff

        KIRKLAND & ELLIS LLP
        601 Lexington Avenue
        New York, NY 10022
        By:  Bonnie Jarret, Esq.
             David Draper, Esq.


        Pro Se

        JESSICA LOPEZ
        65 West 96th Street
        Apartment 25A
        New York, NY 10025

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/23/14

**Sweet, D.J.**

The defendant, <u>pro</u> <u>se</u>, Jessica Lopez ("Lopez" or the "Defendant") has moved (1) to dismiss the complaint of plaintiff Rafael Serrano ("Serrano" or the "Plaintiff"), (2) for the appointment of counsel, and (3) for injunctive relief.  Serrano has moved to dismiss the counterclaim of Lopez alleging slander.

Based on the conclusions set forth below, the motions of Lopez to dismiss the complaint, for counsel, and for injunctive relief are each denied, and the motion of Serrano to dismiss the slander counterclaim is granted with leave granted to Lopez to replead.

## PRIOR PROCEEDINGS

On January 29, 2014, Serrano filed his complaint alleging Defendant's infringement of his intellectual property rights, fraudulent procurement of a federal trademark registration, and misappropriation of his identity and persona. On February 20, 2014, Lopez filed a counterclaim seeking to assert a state law claim for slander and a motion to dismiss Serrano's complaint.  Lopez's pleadings also indicated that she sought injunctive relief.  On March 17, 2014, Serrano moved to

1

dismiss Lopez's slander counterclaim. All motions were marked fully submitted on April 16, 2014.

**FACTS**

**1. Plaintiff's Conception and Use of the AMORETTO Mark**

Plaintiff's complaint alleges that in or about February of 1985, Serrano conceived of a music performance concept which consisted of group performance combining instrumental and vocal aspects resulting in a musical blend which incorporated versified, traditional elements of Latin music, such as Latin beats and the distinctive clave rhythm, with computerized music sounds. (Compl. ¶ 14.) Visually and in live performance, the music performance concept included an element of dance and physical movement, primarily by two or three female performers who would also provide backup vocals, and further included attire derived from Latin American and Spanish origins of fashion, including black and/or white color-schemed garments and Bolero-styled hats. (Compl. ¶ 15.) The term "AMORETTO" was used by Serrano to identify and promote the distribution and performance of recorded and live music associated with this music performance concept. (Compl. ¶ 13.)

Serrano first made commercial use of the AMORETTO mark when he produced the recorded music album Cláve Rocks on a microgroove vinyl record ("LP record") medium and included three versions of the "Cláve Rocks" song—the Club Vocal, Radio Edit, and Dub Rocks versions.  (Compl. ¶ 16.)  The production and recording of the AMORETTO Cláve Rocks album was proposed, organized, controlled, and overseen by Serrano.  (Compl. ¶ 17.) Serrano exercised creative control and direction over the production of the album and made key personnel decisions surrounding the recording and production of the album, including through composing the various instrumental and vocal roles, and then selecting the specific individuals who would fulfill each role.  (Compl. ¶ 18.)

The AMORETTO Cláve Rocks album was recorded and produced on an LP record between February of 1985 and February of 1986 and was sold and distributed beginning in March or April of 1986 with the help of record company PKO Records ("PKO"). (Compl. ¶ 19.)  The AMORETTO mark was printed on the labels of the LP record and the record was distributed to a variety of retail outlets for sale to the public and was played on New York-based radio stations broadcasting in the tri-state metropolitan area.  (Compl. ¶¶ 19-21.)  When the "Cláve Rocks" song was performed on the radio, disc jockeys simultaneously

identified the song with its title (i.e., "Cláve Rocks") and the
associated AMORETTO mark.   (Compl. ¶ 22.)

In July of 1986, Serrano and PKO created a design for
an outer cardboard record jacket to be used for future sales of
the Cláve Rocks LP record previously released in March or April
of 1986.[1]  (Compl. ¶ 23.)  The face of the jacket for the
AMORETTO Cláve Rocks album prominently featured the album title,
Cláve Rocks, alongside the AMORETTO mark.  (Compl. ¶ 24.)
Serrano and PKO enlisted three women, including Defendant, to
pose with Serrano to create the photograph for the AMORETTO
Cláve Rocks album cover.  (Compl. ¶ 26.)  The design for the
face of the jacket for the AMORETTO Cláve Rocks album was
subject to Serrano's final approval; Serrano alleges Lopez was
not involved in the creation, recording, production, or release
of the Cláve Rocks album.  (Compl. ¶¶ 25, 27.)

In September or October of 1986, Serrano began public
performance of the "Cláve Rocks" song using the AMORETTO mark in
various locations in New York City and New Jersey.  (Compl. ¶¶

---

[1] Plaintiff notes in his complaint that at the time the album was released, it
was common practice among small record companies in the recording industry to
undertake designing a record jacket only when an album's initial release had
proven to be popular and that this practice accounts for the design of a
record jacket for the Cláve Rocks album only after it had proven successful.
(Compl. ¶ 23.)

28-29.) Serrano made the booking arrangements and exercised control over the logistics of these early live performance appearances. (Compl. ¶ 30.) During the performances, Serrano danced and played synthesizer and keyboard instruments, while a pre-recorded overlay of the vocal and instrumental tracks from the AMORETTO Cláve Rocks album played. (Compl. ¶ 28.) Three women danced and provided backup vocal accompaniment, attired in Latin American and Spanish fashion-inspired garments – usually in black and/or white color-schemed attire – and topped with Bolero-styled hats. Id.

Lopez was one of the three female dancers and backup vocalists who initially performed with Serrano under the AMORETTO mark. (Compl. ¶ 31.) After several months, however, Serrano became unsatisfied with Lopez' performance quality and level of dedication to his performance concept and Serrano replaced Lopez with another female dancer and singer. Id.

During 1986 and 1987 Serrano continued to promote the concept and expanded his recorded and live music performance activities under the AMORETTO mark to a variety of venues, including Miami, Puerto Rico, South America, the Dominican Republic, and Germany. (Compl. ¶¶ 32-33.) The live performances continued to feature Serrano dancing and playing

5

synthesizer and keyboard instruments, while a pre-recorded

overlay of the vocal and instrumental tracks from the AMORETTO

Cláve Rocks album played.  (Compl. ¶ 34.)  Three women danced

and provided backup vocal accompaniment, attired in Latin

American and Spanish fashion-inspired garments - usually in

black and/or white color-schemed attire - and topped with

Bolero-style hats.  Id.


       Between 1987 and about 1995, Serrano recruited

approximately twelve different dancers and backup singers to act

in live performances of Serrano's distinctive music concept

under the AMORETTO mark.  (Compl. ¶ 35)  Serrano actively

promoted the AMORETTO mark, appearing on Puerto Rican television

and performing with other well-known artists.  (Compl. ¶¶ 36-

37.)  At all times Serrano exercised creative control, quality

oversight, personnel selection, and decision-making over the

performance activities under the AMORETTO mark.  (Compl. ¶ 35.)


       To this day, Serrano has continued to use the AMORETTO

mark to promote his work.  (Compl. ¶ 41).  Serrano receives

royalty payments for the authorized playback, sale, and

performance of the AMORETTO "Cláve Rocks" song and he continues

to promote his concept under the AMORETTO mark to consumers

through popular distribution and communication channels such as

6

YouTube, Discogs, and Facebook.   (Compl. ¶¶ 42, 44.)   Serrano's

efforts and commercial activities using the AMORETTO mark have

resulted in consumers' recognition and association of the

AMORETTO name with Serrano and his distinctive music concept.

(Compl. ¶ 39.)


**2. Defendant's Use of the AMORETTO Mark**


        Lopez has used the AMORETTO name in commerce in

connection with recorded music and live music performance.

(Compl. ¶ 45.)   Her recorded music works under the name AMORETTO

have been and continue to be available for purchase by the

consuming public.   (Compl. ¶ 46.)   Lopez has also performed

under the name AMORETTO at venues in New York City and in the

New York City metropolitan area.   (Compl. ¶ 48.)   Both Lopez'

recorded music and performances under the AMORETTO mark have

incorporated structural and stylistic music features similar to

those employed by Serrano.   (Compl. ¶ 49.)


        Additionally, Lopez has performed songs with similar

titles and content to those performed and recorded by Serrano,

such as songs titled "Rock the Clave" and "Clave Rock," under

the AMORETTO name.   (Compl. ¶ 52.)   Lopez has also featured

elements of dance and physical movement implemented through the

7

inclusion of two or three female performers who provide backup

vocal support along with dance contributions and who appear, in

the style of their dance, physical movement, and performance

attire in a manner similar to the visual performance aspects of

the AMORETTO-brand music concept.  (Compl. ¶¶ 55-56.)  In at

least one public performance in New York City under the name

AMORETTO, Lopez has featured a male performance role in which

the male performer resembles Serrano.  (Compl. ¶ 59.)  Music

fans, after viewing Lopez' performances under the AMORETTO name,

have contacted Serrano to question whether there is any

relationship between Serrano and Lopez' music activities.

(Compl. ¶ 62.)


Serrano has more than once apprised Lopez of his

rights in the AMORETTO mark and Serrano's counsel has requested

that Lopez cease and desist her use of the AMORETTO mark.

(Compl. ¶ 63.)


### 3. Defendant's Procurement of USPTO Registration for the AMORETTO Mark


On November 3, 2010, Lopez filed a Trademark/Service

Mark Application, Serial Number 85/168,554 (the "'554

application"), with the United States Patent and Trademark

Office (the "USPTO") seeking federal registration for the mark
AMORETTO for "[s]ound recordings featuring music" and
"[e]ntertainment, namely, live music concerts; [e]ntertainment,
namely live performances by a musical band."   (Compl. ¶¶ 64-65.)
In the application, Lopez declared that she "believes the
applicant to be the owner of the trademark/service mark sought
to be registered," and further declared that "to the best of
[her] knowledge and belief no other person, firm, corporation,
or association has the right to use the mark in commerce."
(Compl. ¶ 67.)   Lopez also submitted to the USPTO a photograph
of the AMORETTO Cláve Rocks album and represented that it was a
"photographed album cover with picture of AMORETTO performing
live musical concert with her band on cover."   (Compl. ¶ 73.)

          At the time Lopez submitted her application, Serrano
had already expressly apprised Lopez of his rights in the
AMORETTO mark.   (Compl. ¶ 69.)

          On March 15, 2011, the USPTO examiner rejected the
'554 application in its entirety.   With respect to Lopez'
request to register the mark for "[s]ound recordings featuring
music," the USPTO examiner stated that the specimen of record
(i.e., the photograph of the face of the jacket of the AMORETTO
Cláve Rocks album) was insufficient alone to demonstrate use of

9

the AMORETTO name as a mark.  (Compl. ¶ 80.)   The USPTO examiner

required that Lopez supplement the '554 application with (a) one

or more additional specimen(s) demonstrating that the AMORETTO

name was used by the applicant on a series of sound recordings

and (b) evidence that the AMORETTO name was promoted and

recognized by others as the source of the series of sound

recordings, or evidence that the performer controlled the

quality of the recordings and controlled the use of the name.

Id.   The USPTO examiner further explained that if the sound

recordings were recorded under the applicant's control, Lopez

could submit, as evidence of control, a sworn statement that

"[t]he applicant produces the goods and controls their quality."

Id.


On June 29, 2011, Lopez submitted an additional

specimen in the form of a photograph of Lopez holding two LP

record jackets, one of which was the AMORETTO Cláve Rocks album,

and the other an album released by the artist DIVA titled I

Wanna Break Night With You.   (Compl. ¶ 81.)   Lopez' specimen

displayed the jacket of DIVA's I Wanna Break Night With You with

the word "Amoretto," while the commercially-released album

jacket does not contain the word "Amoretto."   (Compl. ¶ 82.)

Along with the specimen, Lopez also submitted an explanatory

statement to the USPTO representing that this specimen was a

10

"digitally photographed picture of AMORETTO holding two compact disc covers displaying discography of AMORETTO as supporting evidence that the applied-for-mark is used as a series of multiple works and not a single work."  (Compl. ¶ 84.)  Lopez noted that "[i]n response to the substantive refusal(s) . . . [t]he applicant produces the goods and controls their quality." (Compl. ¶ 90.)

Lopez is not named on the DIVA I Wanna Break Night With You album credits.  (Compl. ¶ 88.)

On November 1, 2011, the USPTO granted the '554 application and Lopez was issued U.S. trademark registration No. 4,048,043 (the "'043 registration").  (Compl. ¶ 95.) Subsequently, Lopez has demanded, citing the '043 registration, that Serrano cease and desist from the use of the trade name and service mark AMORETTO.  (Compl. ¶ 97.)  Lopez has also submitted infringement complaints to YouTube, requesting that YouTube remove videos depicting performances by Serrano under the AMORETTO mark.  (Compl. ¶ 98.)  YouTube has honored this request on at least one occasion.  Id.

Serrano has faced reluctance from prospective business partners to collaborate and invest in business ventures to

11

further develop and capitalize on the AMORETTO-brand music
concept.  (Compl. ¶ 99.)   Lopez' registration for the AMORETTO
mark has been given as the reason for this reluctance.  Id.

## 4. Allegations of Defamation

Lopez claims that Serrano has defamed her "on the
internet[,] by phone to [her] colleagues and by email and at
venues" over the past 29 years and more frequently since July 6,
2013.  (Countercl. 9.)  She further states that Serrano "tells
everyone that [she] is riding his 'coat tail.'"  Id.  Lopez
alleges that she has sustained mental, emotional and financial
injuries, such as money she would get from performing shows, and
that she has been in "Doctor's care for fear and depression" as
a result of Serrano's actions.  (Countercl. 9-10.)

## DISCUSSION

### 1. Defendant's Motion to Dismiss Does Not Set Forth a Cognizable Basis for Dismissal

On a motion to dismiss pursuant to Rule 12(b)(6), all
factual allegations in the complaint are accepted as true, and
all inferences are drawn in favor of the pleader.  Mills v.
Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993).  A

complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Desilva v. North Shore-Long Island Jewish Health Sys., Inc., 770 F.Supp.2d 497, 506 (E.D.N.Y. 2011) (citing to Twombly, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.")). In other words, the factual allegations must "possess enough heft to show that the pleader is entitled to relief." Twombly, 550 U.S. at 557 (internal quotation marks omitted).

Plaintiff provides a lengthy and detailed description of events relating to Lopez in his complaint. (Compl. ¶¶ 13-100.) Lopez has denied the allegations of the complaint but has failed to set forth a cognizable basis to dismiss the complaint.[2] As such, her motion to dismiss must be denied.

---

[2] Liberally construed, Lopez's papers could be read to allege that the complaint is, in some sense, time-barred. (Def. Aff. 1) ("Serrano had one

## 2. Defendant May Seek Counsel Through the Pro Se Office

Lopez may seek appointment of counsel through the <u>Pro Se</u> Office of the court.  Her motion for court appointment is denied at this time with leave granted to renew at the time of any dispositive action.

## 3. Defendant Has Failed to Make a Factual Showing Justifying Injunctive Relief

In order to establish a claim for preliminary injunctive relief, a movant must show: "(1) irreparable harm and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party." <u>Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.</u>, 598 F.3d 30, 35 (2d Cir. 2010); <u>see also</u> <u>Oneida Nation of N.Y. v. Cuomo</u>, 645 F.3d 154, 164 (2d Cir. 2011).  The moving party must not only show that there are "serious questions" going to the merits, but must also establish

---

year to contest me - now 3-5 YRS later - he's contesting me?")  Lopez has only made one remark to this effect, however, and has failed to clarify any sufficiently clear statute of limitations grounds that can be treated as a cognizable grounds for dismissal.

that "the balance of hardships tips decidedly" in its favor.
Citigroup Global Markets, Inc., 598 F.3d at 35 (quoting Jackson
Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir.
1979)).

In order for injury to be considered irreparable it
must be "actual and imminent" and one that "cannot be remedied
if a court waits until the end of trial to resolve the harm."
Toney-Dick v. Doar, No. 12-9162, 2013 WL 1314954, at *9
(S.D.N.Y. Mar. 18, 2013) (quoting Faiveley Transp. Malmo AB v.
Wabtec Corp., 559 F.3d 110, 118 (2d Cir. 2009)).  Money damages
are thought to be the "antithesis of irreparable harm."  Toney-
Dick, 2013 WL 1314954, at *9; see also Synergy Advanced Pharm.,
Inc. v. CapeBio, LLC, No. 10-1736, 2010 WL 2194809, at *4
(S.D.N.Y. June 1, 2010).  To make a showing of a "likelihood of
success" a plaintiff must convince the Court that it is more
likely than not – or "the probability of prevailing is 'better
than fifty percent'" – that it will succeed on its claims.
Greenlight Capital, L.P. v. Apple, Inc., No. 13-976, 2013 WL
646547, at *4 (S.D.N.Y. Feb. 22, 2013) (quoting BigStar Entm't,
Inc. v. Next Big Star, Inc., 105 F.Supp.2d 185, 191 (S.D.N.Y.
2000)).

15

To the extent that Lopez seeks injunctive relief, she
has made no showing, factual or otherwise, in support of her
request for this remedy and, as such, it must be denied.[3]  See,
e.g., A.X.M.S. Corp. v. Friedman, 948 F.Supp.2d 319 (S.D.N.Y.
2013) (request denied where movant made insufficient showing
under the applicable factors).

## 4. Defendant's Counterclaim Contains Insufficient Factual Matter to Survive a Motion to Dismiss

Defamation is the injury to one's reputation either by
written expression, which is libel, or by oral expression, which
is slander.  Krepps v. Reiner, 588 F.Supp.2d 471, 483 (S.D.N.Y.
2008) aff'd, 377 F. App'x 65 (2d Cir. 2010) (citing Idema v.
Wager, 120 F.Supp.2d 361, 365 (S.D.N.Y. 2000)).  To state a
claim for defamation, a plaintiff "must allege (1) a false
statement about the plaintiff, (2) published to a third party
without authorization or privilege, (3) through fault amounting
to at least negligence on [the] part of the publisher, (4) that
either constitutes defamation per se or caused 'special

---

[3] Indeed, Lopez seems to allege that she is suffering monetary damages, which
are an improper basis for granting a preliminary injunction.  (Countercl. 10)
("I am seeking that he stop harassing me — honor the court order set by a
Judge in his own home town in New Jersey to stop contacting people I work
with including record label and friends to get those people to stop working
with me.  Each day he does this I loose [sic] show money.");  Toney-Dick, 2013
WL 1314954, at *9 (if the "harm can be remedied in money damages[, that] is
the antithesis of irreparable harm, and such a fact requires that the Court
not find an irreparable injury").

damages.'"  Thai v. Cayre Group, Ltd., 726 F.Supp.2d 323, 329

(S.D.N.Y. 2010).


          A defamation or slander claim "is only sufficient if

it adequately identifies the purported communication, and an

indication of who made the communication, when it was made, and

to whom it was communicated."  Thai, F.Supp.2d at 329 (quoting

Scholastic, Inc. v. Stouffer, 124 F.Supp.2d 836, 849 (S.D.N.Y.

2000)).  A complaint that sufficiently alleges the occurrence of

a false statement of fact must nevertheless be dismissed if it

fails to also allege "who," "when," and "to whom" the alleged

defamatory statements were made.  Reeves v. Cont'l Equities

Corp. of Am., 767 F.Supp. 469, 473 (S.D.N.Y. 1991); see also

Krepps, 588 F.Supp.2d at 484 (noting that failure to identify

allegedly defamatory and slanderous statements were too

generalized and, as such, insufficient to state a claim); see

also, Nowak v. EGW Home Care, Inc., 82 F.Supp.2d 101, 113

(W.D.N.Y. 2000).


     This court construes Lopez's counterclaim allegations

liberally.  Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("[A] pro

se complaint, however inartfully pleaded, must be held to less

stringent standards than formal pleadings drafted by lawyers.")

(quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

17

Nevertheless, although Lopez alludes to ongoing, repeated instances of alleged defamation, her counterclaim lacks the requisite specificity to survive a motion to dismiss.   See Iqbal, 556 U.S. at 678 (though the court must accept the factual allegations of a complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation") (quoting Twombly, 550 U.S. at 555).   At most, Lopez alleges a vague statement made by the Plaintiff that Lopez was "riding his 'coat tail.'"   (Countercl. 9.)   This type of statement, however, is most appropriately categorized – to the extent it can be analyzed without proper factual context and specificity – as a statement of opinion, which is not actionable as defamation. See Biro v. Condé Nast, 883 F.Supp.2d 441, 459-60 (S.D.N.Y. 2012); Egiazaryan v. Zalmayev, 880 F.Supp.2d 494, 503 (S.D.N.Y. 2012).   Lopez's counterclaim for defamation, therefore, is dismissed with leave granted to replead within 20 days.

18

**CONCLUSION**

Based upon the facts and conclusions of law set forth above, the Defendant's motions to dismiss the complaint, for the appointment of counsel, and for injunctive relief are denied. Plaintiff's motion to dismiss the slander counterclaim is granted.   Defendant is granted leave to replead within 20 days.

Dated:     New York, New York
           June /8, 2014

                                    Robert W. Sweet, U.S.D.J.

19