UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X

RAFAEL SERRANO,

                    Plaintiff,

   - against -

JESSICA LOPEZ,

                    Defendant.

----------------------------------------X

A P P E A R A N C E S:

    <u>Attorneys for the Plaintiff</u>

    KIRKLAND & ELLIS LLP
    601 Lexington Avenue
    New York, NY 10022
    By:  Jeanna M. Wacker, Esq.
        David N. Draper, Esq.
        Bonnie L. Jarrett, Esq.
        Sam Kwon, Esq.

    <u>Pro Se</u>

    JESSICA LOPEZ
    65 West 96th Street, #25A
    New York, New York 10025

14 Civ. 560 (RWS)

<u>OPINION</u>

1

**Sweet, D.J.**


Plaintiff Rafael Serrano ("Serrano" or the "Plaintiff") has moved pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment against Defendant Jessica Lopez ("Lopez" or the "Defendant").  Serrano has separately moved for a default judgment against Lopez pursuant to Federal Rule of Civil Procedure 37, as a sanction for failure to participate in discovery.  For the reasons stated below, the motion for a default judgment is denied, while the motion for summary judgment is granted in part and denied in part.


## Prior Proceedings


This case, which concerns the right to use the name "Amoretto" in the music industry, was initiated by Serrano on January 29, 2014, with the filing of a complaint against Lopez claiming trademark infringement, trademark cancellation, civil liability for false or fraudulent registration, unfair competition, and common law appropriation of identity.  (Dkt. No. 1.)  Lopez responded with a counterclaim of her own on February 20, 2015, alleging defamation against Serrano.  (Dkt. No. 8.)  By an Opinion dated June 23, 2014, the Court denied

2

Lopez' motion to dismiss the complaint against her and granted Serrano's motion to dismiss her defamation counterclaim. Serrano v. Lopez, No. 14 Civ. 560, 2014 WL 2854628 (June 23, 2014). Although the Court gave Lopez 20 days to refile her defamation claim, id. at *7, she chose not to do so.

During the second half of 2014, Lopez made several unsuccessful efforts to obtain legal counsel (see Dkt. Nos. 26, 28) while Serrano made several unsuccessful efforts to obtain discovery from her. (See Dkt. Nos. 30, 32.) On January 3, 2015, the Court found that there was no good cause for Lopez' delay in providing discovery and issued an Order requiring her to serve initial disclosures, respond to interrogatories, and appear for a deposition. (Dkt. No. 39.) There is no indication in the record that Lopez ever complied.

On March 20, 2015, Serrano filed the instant motions: one seeking summary judgment (Dkt. No. 46), and one seeking a default judgment as a sanction for Lopez' failure to provide discovery. (Dkt. No. 53.) After obtaining two extensions from the Court (Dkt. Nos. 61 & 63), Lopez filed her opposition papers pro se on June 30, containing dozens of pages of exhibits not previously made available to Serrano. (Dkt. No. 64.) Serrano filed his reply papers on July 17 (Dkt. Nos. 65-67) and the motion was marked fully submitted.

3

**The Facts**

The facts, as set forth in the Plaintiff's Local Rule 56.1 Statement (Dkt. No. 49) and the facts section of the Defendant's opposition papers (Dkt. No. 64 at 7-21) are not in dispute except as noted below.

The dispute centers on a musical act by the name of "Amoretto" that enjoyed commercial success in the 1980s, particularly with the 1986 single and album "Clave Rocks." Serrano and Lopez each acknowledge the other's involvement with the act, but the two differ regarding the origin of the Amoretto name, the production of Clave Rocks, and the ownership of any trademark.

Serrano states that he came up with the name Amoretto in February 1985, as he was writing and developing the Clave Rocks song.  He says that after producing a demo version of Clave Rocks he reached an agreement with PKO Records to release the song commercially.  The song came out in early 1986 and received significant radio play.  Serrano characterizes the process of conceiving and creating Clave Rocks as "organized, controlled, and overseen" by him.

In Serrano's version of events, Lopez enters the picture in or around July 1986, as Serrano was designing a record jacket

for the Clave Rocks album.  According to Serrano, he decided
that the album cover would "feature an image of himself,
standing alongside three females attired in Latin American and
Spanish fashion-inspired garments and Bolero-styled hats," an
image that was "a visual depiction consistent with the visual
aspects of his music performance vision."  Lopez was one of
those three females.  Serrano states that she continued to be
associated with the Amoretto act as "one of the two or three
female dancers and backup vocalists who initially performed with
Serrano," but that she "did not do more than provide backup
dancing, lip syncing, and backup vocals."  The "subordinate
nature" of Lopez' "limited involvement" was in contrast to the
"lead role" played by Serrano, who played the sole instrument in
the musical act, a keyboard, and even booked the performances
and handled logistics.

Lopez remembers the situation quite differently.  According
to her, she thought up the name Amoretto at a Julio Iglesias
concert on March 5, 1983, and decided that it would become her
stage name in a future singing career.  She had originally
intended to call herself Amaretto, after her favorite drink, but
decided to change the spelling so as not to offend any trademark

5

connected to the amaretto liqueur.[1]  Lopez states that she called herself Amoretto in 1984 and 1985, during her time as a backup singer to the recording artist Lisa Lisa, and that she continued to use Amaretto and Amoretto as stage names during 1986 and 1987.

In Lopez' version of events, Serrano enters the picture in 1984 or 1985, when she was searching for a writer and remixer to help her bring about her vision of Amoretto as a "3 girl group," with Lopez as the lead singer.[2]  She alleges that she hired him to co-write songs for Amoretto, and although she acknowledges that Serrano played a role in managing and organizing logistics for the act, she states that "Serrano did not always perform and did not dance nor sing.  He basically faked playing the synthesizer/keyboard instrument."  She alleges that Serrano began stealing her ideas and attempted to marginalize her within the group, forcing her to lip-sync instead of singing live.

As time went on, the situation within Amoretto began to

_____

[1] An amoretto, also known as a putto, is an Italian term for a small, childlike cupid or angel, frequently appearing in classical and Renaissance art.  The word is spelled differently from amaretto, a popular Italian liqueur.

[2] There is considerable confusion in Lopez' inartfully-written opposition papers as to whether she conceived of Amoretto as the name of a music group, or as her own stage name within the group.  Compare D.'s Opp. at 15 ("AMORETTO went down in music history as a three girl group with me as the singer and two other girls would dance and provided backup vocal accompaniment" (emphasis in the original)) with id. at 18 ("I am the artist AMORETTO.").

sour.  According to Serrano, after about six months of working together, he "became unsatisfied with Lopez's performance quality and level of dedication" and "replaced Lopez with another female backup dancer and backup singer to support his continued music performances under the AMORETTO mark."  Lopez, on the other hand, says that Serrano began to steal her ideas and promote himself at her expense, at which point she "fired him as my co-writer/personal manager by 1988-89 as I did not want anything to do with him as I went SOLO."  She also alleges that Serrano made sexual advances to the singers and that he asked her to marry him several times.

During the decades after the split, both Serrano and Lopez continued to perform under the Amoretto name, although neither side's submissions indicate significant performing activity as Amoretto between the late 1980s and late 2000s.  Both Serrano and Lopez have recently shown interest in ramping up their music careers and desire to use the name Amoretto in doing so.  Lopez signed a recording contract to create music as Amoretto in 2010, and has released four recordings, entitled "Rock the Clave," "Clave Rock," "Neverever," and "I'll be Your Juliet."  Serrano is currently planning on releasing a new single, followed by a multi-track album, as Amoretto.  Serrano has maintained Amoretto pages on the websites Discogs and YouTube, and continues to

receive royalties for Clave Rocks and two other mid-1980s Amoretto songs.

In November 2010, Lopez took action to claim the Amoretto name for her own.  She filed an application with the United States Patent and Trademark Office (the "USPTO") for the mark "Amoretto" in the area of "sound recordings featuring music" and "entertainment, namely live performances by a musical band."  As part of her application, she included a picture of the Clave Rocks album cover.  The USPTO rejected her application on March 15, 2011, stating that the album cover alone was insufficient to demonstrate use of the Amoretto name and recommending that Lopez resubmit her application with additional evidence.  Lopez submitted a new application on June 29, 2011, including pictures of Amoretto's Clave Rocks album cover and the cover of an album released by the related group DIVA,[3] entitled "I Wanna Break Night With You."  As Lopez concedes, she altered the DIVA album cover in order to make it look like it was by Amoretto as well:

> I displayed the specimen displayed the jacket [sic] of DIVA's I Wanna Break Night With You with the word "Amoretto," while the commercially-released album jacket does not contain the word "Amoretto."  This was done to show that both ladies depicted in these photo albums

_____

[3] According to Lopez, DIVA included Annette Mimoso Sanchez, who had also sung on Clave Rocks.  Lopez does not allege that she herself performed on the album or had any involvement in its production.  As Lopez puts it, "I am not named on the DIVA - I Wanna Break Night With You album credits but one of my dancers/singers is listed showing that we were in collaboration to doing more than one song."

> released music under both AMORETTO and DIVA are one in
> the same ladies which released two musical works on the
> same label.  [sic]  This was required to show proof that
> we were involved in more than one song.

She included a statement in her application to the USPTO
explaining that the specimen was a "digitally photographed
picture of AMORETTO holding two compact disc covers displaying
discography of AMORETTO as supporting evidence that the applied-
for-mark is used as a series of multiple works with one of our
artists now becoming DIVA and not a single work."  Unaware of
the alteration, the USPTO granted Lopez' application and issued
her U.S. Trademark Registration No. 4,048,043, covering the word
Amoretto as used in musical recordings and live performances.


**Applicable Standard**


When a party fails to provide discovery in response to a
court order, Federal Rule 37(b)(2) allows the Court to impose a
variety of sanctions, from prohibiting certain claims and
defenses to staying proceedings to dismissal of the action in
whole or in part.  Rule 37 requires that any sanction be "just,"
in order to ensure that "the severity of sanction [] be
commensurate with the non-compliance."  Shcherbakovskiy v. Da
Capo Al Fine, Ltd., 490 F.3d 130, 140 (2d Cir. 2007).  A

district court has "wide discretion" in determining what sanction is appropriate, Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1365 (2d Cir. 1991), but dismissal should not be imposed absent "willfulness, bad faith, or any fault" on the part of the party that failed to comply. Shcherbakovskiy, 490 F.3d at 140 (quotation omitted).

Summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The relevant inquiry on application for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. A court is not charged with weighing the evidence and determining its truth, but with determining whether there is a genuine issue for trial. Westinghouse Elec. Corp. v. N.Y. City Transit Auth., 735 F. Supp. 1205, 1212 (S.D.N.Y. 1990) (quoting Anderson, 477 U.S. at 249). Where there are ambiguities in the factual evidence presented, the Court draws all inferences in favor of the nonmoving party. Chiang v. Donahoe, 579 F. App'x 39, 40 (2d

10

Cir. 2014).

## The Motion for a Default Judgment is Denied

Serrano points out, quite correctly, that Lopez has not complied with her discovery obligations, even after the entry of two Orders compelling her to serve the Plaintiff with her initial disclosures and discovery responses.  (Dkt. Nos. 30 & 39.)  Although Lopez included significant factual material in her opposition papers to the motion for summary judgment, these documents, chosen by her in order to bolster her arguments and never previously shared with the Plaintiff, are not equivalent to actual participation in discovery.  Given the length of Lopez' refusal to participate in discovery, the multiple Orders that have been entered, and her limited and selective disclosure in connection with the instant motion, the record is sufficient to show the sort of willful noncompliance that would warrant the imposition of sanctions.

Nonetheless, the Court in its discretion declines to do so. Courts in this Circuit are obligated to "afford a special solicitude to *pro se* litigants," which includes "leniency in the enforcement of [] procedural rules."  Tracy v. Freshwater, 623 F.3d 90, 101 (2d Cir. 2010); see also LeSane v. Hall's Sec.

11

Analyst, Inc., 239 F.3d 206, 209 (2d Cir. 2001).  Lopez has
offered at least some excuse for her delay in complying, stating
that she was hospitalized due to a fall on ice.  (Dkt. No. 64 at
1.)  Although the excuse is extremely thin, particularly since
she was first ordered to provide discovery on October 14 of last
year (Dkt. No. 30), other factors also weigh against dismissal.
The Court is mindful that Lopez has diligently, if
unsuccessfully, attempted to obtain counsel (see, e.g., Dkt.
Nos. 26, 28, 31), and that the civil discovery process, which is
complex even for trained litigators, can be extraordinarily
difficult to navigate for individual *pro se* defendants.  Lopez'
production of documents in connection with her opposition to
summary judgment evinces a recognition of her obligation to
factually support her case.  And the fact that this Opinion
denies summary judgment on several of Serrano's claims indicates
that granting a default judgment under Rule 37 would deprive
Lopez of the chance to put forward arguments that are at least
potentially meritorious.

The motion for a default judgment is therefore denied with
leave to refile.  Within ninety days of the filing of this
Opinion, Lopez is ordered to serve her initial disclosures,
produce or make available for inspection all responsive
documents and tangible things in her possession, respond to the

Plaintiff's interrogatories and requests for admission in writing and under oath, and schedule a time where she will appear for a deposition.  In the event that Lopez does not substantially comply with these requirements, the Court will look favorably on a renewal of the motion.

## The Motion for Summary Judgment on Serrano's Trademark Infringement, Unfair Competition, and Appropriation of Identity Claims is Denied

"The critical issue for purposes of determining ownership of [a trade]mark . . . is whether plaintiff — or some other person or persons — first appropriated and used the mark in commerce."  Rick v. Buchansky, 609 F. Supp. 1522, 1531 (S.D.N.Y. 1985).[4]  Serrano and Lopez tell two very different stories of the origin of the name Amoretto, the formation of the musical act that bore that name, the recording of Clave Rocks, and the breakdown of their musical and commercial association.  Both parties also include significant factual support for their assertions.  The evidence offered by Serrano is compelling, as perhaps should be expected from a plaintiff represented by one

---

[4] The calculus is different where a party has a valid trademark registered with the USPTO.  See Dress for Success Worldwide v. Dress 4 Success, 589 F. Supp. 2d 351, 358 (S.D.N.Y. 2008).  Since Lopez' trademark was obtained illegitimately, as discussed further below, this analysis is not relevant here.

of the nation's finest law firms.  Most notably, Serrano cites
to the transcript of the deposition of Luis Torres, Amoretto's
road manager, who identifies Serrano as having come up with the
name Amoretto.  (Draper Decl., Dkt. No. 52, Ex. 1, at 22.)
Additionally, Serrano points to the transcript of the deposition
of Carlos Mandes, also known as Charlie Chase, who played a
significant role in the group's early efforts and describes the
formation of Amoretto thus:

> Rae came to me. He had an idea. He played it for me. I
> believed in the idea. I brought it to the record company.
> I got them to sign them. Then during the production was
> when the name Amoretto came into place.

Draper Decl. Ex. 5, at 15.  Lopez' evidence is thinner and more
scattered; although she attaches 95 separate exhibits to her
opposition papers, the majority of them are unclear, unrelated,
or postdate the matters at issue.[5]  There are, however, certain
exhibits that tend to support Lopez' version of how Amoretto was
formed in the 1980s, most notably a contract dated April 3, 1985
between PKO Records and "Jessica Lopez Aka AMORETTO" concerning
the recording of Clave Rocks and bearing the signature of

---

[5] Serrano argues that the Court should refuse to consider Lopez' factual
submissions as a sanction for her failure to take part in discovery.  As with
their request for dismissal, the Court recognizes that Lopez is out of
compliance with its discovery Orders, but declines to sanction her due to the
"special solicitude" afforded to *pro se* litigants.  See Tracy v. Freshwater,
623 F.3d at 101.

"Jessica Lopez Aka Amoretto."  (Dkt. No. 64, Ex. 7.)  The

contract, combined with Chase's statement that the name Amoretto

was attached to the group during the production of Clave Rocks,

lends support to the idea that Lopez' use of the mark as a stage

name predated her association with Serrano.

The factual analysis need not proceed any further than

that.  In resolving a motion for summary judgment under Rule 56,

"the judge's function is not himself to weigh the evidence and

determine the truth of the matter, but to determine whether

there is a genuine issue for trial."  U.S. v. Technodyne LLC,

753 F.3d 368, 381 (2d Cir. 2014) (quoting Anderson, 477 U.S. at

249); see In re Dana Corp., 574 F.3d 129, 156 (2d Cir. 2009)

("On a motion for summary judgment, the court is to identify

factual issues, not to resolve them.").  On the evidence

currently before the Court, a reasonable jury could potentially

find that either Serrano or Lopez had the right to the Amoretto

mark.  Summary judgment on Serrano's claims for trademark

infringement, unfair competition, and appropriation of identity

is therefore inappropriate, as each of these claims is

predicated on Serrano having a valid and protectable interest in

the name "Amoretto."  See Lane Capital Mgmt., Inc. v. Lane

Capital Mgmt., Inc., 192 F.3d 337, 344 (2d Cir. 1999) ("To

prevail on an infringement claim, a plaintiff must establish

that it possesses a valid, legally protectible mark . . . ."); Alzheimer's Foundation of Am., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc., 796 F. Supp. 2d 458, 465 (S.D.N.Y. 2011) ("The elements of a cause of action of unfair competition under New York common law . . . require that a party demonstrate a valid, protectible mark . . . ."); Prima v. Darden Restaurants, Inc., 78 F. Supp. 2d 337, 349 (D.N.J. 2000) ("To allege a prima facie case for infringement of the right of publicity, the plaintiff must show both validity and infringement.").  The ownership of the Amoretto mark, and thus the right to protection from infringement, is a matter that will need to be determined at trial.

**The Motion for Summary Judgment on Serrano's Claims for Trademark Cancellation and Civil Liability for False or Fraudulent Representation is Granted**

Although the parties vehemently contest the facts undergirding Serrano's infringement-related claims, the facts regarding his claims for trademark cancellation due to fraud, pursuant to 15 U.S.C. §§ 1064 and 1119, and civil liability for false or fraudulent registration, pursuant to 15 U.S.C. § 1120,

are not in dispute.[6]  Serrano asserts (Plaintiff's Local Rule
56.1 Statement, Dkt. No. 48 (the "P-SOF"), ¶¶ 94-98) and Lopez
admits (Defendant's Opposition Papers, Dkt. No. 64 ("D's Opp."),
at 19-20) that Lopez' first application for the Amoretto
trademark was rejected by the USPTO because it was supported by
only one specimen – the Clave Rocks album cover.  Both sides
also agree that Lopez' second, successful application was
supported by pictures of both the Clave Rocks album cover and a
second album cover entitled I Wanna Break Night With You,
featuring the names DIVA and Amoretto.  As Lopez admits, the
second album cover was altered to include the Amoretto name; it
was not present on the commercial version of the album, nor did
Lopez participate in the album's production, under the Amoretto
name or otherwise.  (D's Opp. at 21.)  Nonetheless, Lopez told
the USPTO that the two albums were "discography of AMORETTO as
supporting evidence that the applied-for-mark is used as a
series of multiple works and not a single work."  (P-SOF ¶ 103,
D's Opp. at 20.)  Lopez states in her opposition papers that she
altered the album cover, "to show that both ladies depicted in
these photo albums released music under both AMORETTO and DIVA

---

[6] Serrano separately argues that summary judgment is warranted on these claims
because he, rather than Lopez, owns the Amoretto trademark. (Pl.'s Br., Dkt.
No. 49, at 20-21).  This argument, like his infringement-based claims, must
fail at this stage because there is a genuine dispute as to who owns the
Amoretto mark.

are one in the same ladies which released two musical works on
the same label.  [sic]  This was required to show proof that we
were involved in more than one song." (D's Opp. at 20.)  In
other words, the two albums shared a singer, but that singer was
not Lopez and the album was not by Amoretto.[7]

A party alleging that a registration was fraudulently
obtained must show by clear and convincing evidence 1) a false
representation regarding a material fact; 2) that the person
making the representation knew or should have known that the
representation was false; 3) an intention to induce the listener
to act or refrain from acting in reliance on the
misrepresentation; 4) reasonable reliance on the
misrepresentation; and 5) damage proximately resulting from such
reliance.  Patsy's Italian Restaurant, Inc. v. Banas, 658 F.3d
254, 270-71 (2d Cir. 2011).  Each element is present here.
Lopez concedes that she altered the DIVA album cover from its
original form by putting the Amoretto name on it, and that she
did not participate in the original album.  (D.'s Opp. at 20-
21.)  She acknowledges that the alteration "was required to show
proof that we were involved in more than one song" (Id. at 20) –

_____

[7] Lopez' decision to alter the DIVA album cover and submit it as evidence to
the USPTO is particularly bizarre because the exhibits to her opposition
brief indicate that she might have had sufficient evidence of her continued
use of the Amoretto name to obtain the registration legitimately.

in other words, that it was made to induce reliance.  The

USPTO's reliance can be inferred from its rejection of her

original trademark application – her application was

insufficient when supported by the Clave Rocks album cover

alone, but the addition of the altered DIVA album cover was

enough for the USPTO to grant her the mark.  It is also clear

that Serrano has suffered damages from Lopez' fraudulent

trademark registration, as she concedes that she used the

trademark to get the popular website YouTube to remove videos of

Serrano performing under the Amoretto name.  (D.'s Opp. at 21.)

Although the money value of those videos' presence on the

internet is unquantifiable, their removal is sufficient to

establish some amount of damages, and thus to support a grant of

summary judgment.  The USPTO is therefore directed to cancel

U.S. Trademark Registration No. 4,048,043 due to fraud.

Under 15 U.S.C. § 1120, the cancellation of the trademark

due to fraud renders Lopez liable to anyone who suffered damages

because of it.  Serrano's damages are, however, entirely

speculative; the only harm Serrano claims to have suffered as a

result of Lopez' fraudulent trademark registration – as opposed

to her use of the Amoretto name in violation of his putative

trademark – are the removal of his YouTube videos "on at least

one occasion" (Complaint, Dkt. No. 1, ¶ 98; accord P-SOF ¶ 110-

11) and unspecified "reluctance from prospective business partners to collaborate and invest in business ventures." (Complaint ¶ 99.) Neither of these alleged harms is specific enough to support a grant of compensatory damages on summary judgment.

Nor is there any other avenue for Serrano to recover money damages under 15 U.S.C. § 1120. The statute cannot be used to support an award of attorney's fees absent evidence that the registration "was fraudulently obtained solely for the purpose of instituting completely vexatious litigation." Blue Bell, Inc. v. Jaymar-Ruby, Inc., 497 F.2d 433, 439 (2d Cir. 1974). There is no indication that Lopez had such an intent, nor has Serrano alleged as much. (See, e.g., Complaint at ¶ 79 (alleging that the false representation was made with intent to deceive the USPTO and obtain the trademark registration, but making no mention of litigation).) Similarly, punitive or exemplary damages are unavailable under § 1120. Sik Gaek, Inc. v. Yogi's II, Inc., No. 10-CV-4077, 2014 WL 4063403, at *3 (E.D.N.Y. Aug. 14, 2014), vacated in part on other grounds, 604 F. App'x 79 (2d Cir. 2015). As Serrano has not shown "reasonably certain, adequately proven, and sufficiently non-conjectural consequential damages" stemming from the fraudulent registration, § 1120 entitles him to nominal damages only. See

20

<u>Jill Stuart (Asia) LLC v. Sanei Int'l Co., Ltd.</u>, 586 F. App'x
29, 32 (2d Cir. 2011).

**Conclusion**

      Serrano's motion for a default judgment is denied.  Lopez
is ordered to fulfil her discovery obligations, as discussed
above, within ninety days of the entry of this opinion.
Serrano's motion for summary judgment on his trademark
infringement, unfair competition, and appropriation of identity
claims is denied.  Serrano's motion for summary judgment on his
claims for trademark cancellation and civil liability for false
or fraudulent representation is granted, and he is awarded
nominal damages of $1.  The USPTO is directed to cancel U.S.
Trademark Registration No. 4,048,043.

It is so ordered.


New York, NY
~~August~~      , 2015

_____
ROBERT W. SWEET
U.S.D.J.


22